Good morning once more. Patricia J. Berry for the Appellant Darla Elwood. Your Honor, in response to Judge Graber's concern about did I establish a nexus, what was the purpose of the reports? Actually, that was what I had alleged. It was unclear exactly why these reports were continuing to be generated. Keep in mind, we've alleged that the only reason that Darla Elwood lost her children is because Barbara DeMerle put in her petition that she failed to protect the siblings because she allowed Anthony to come back into the home. The charge against Anthony and against the mother were dismissed in November of 1999. We've alleged she successfully completed her family reunification services. Why were these reports continuing to be generated? Which we have alleged, as I indicated early, were repeatedly being proved to be consistently false. Why would the social workers go to a therapist, a so-called therapist, in violation of a court order? It's because there was no control over the social workers' conduct, and they had one goal, because as Ms. Wellman made it clear, and we've pled, she told Darla Elwood when she came on board, there will be no change in the custody order. In order to ensure no change in the custody order to a mom who had successfully completed reunification services, then you have to generate information that puts her in the worst light possible, that there's ongoing abuse, ongoing neglect. And that's where, according to what Mr. Boyle alleged, and we adopted into this complaint, that the social workers went to Mr. Boyle, despite his lack of qualifications, his startling lack of qualifications, despite the fact that they knew that he was not producing reports that even met standards by any means under the APA. The social workers were well aware that if they didn't know the history before going into court, they certainly knew it during the progress that these fathers did not like Darla Elwood for whatever reason. And so you had the two fathers, and then, incidentally, Sonia Jimenez, who also played somewhat of a role, and then Mr. Boyle and the two social workers. It was utterly futile, utterly futile, other than going through the evidentiary hearing to prove the falsity of these reports. Other than that, there was no chance of her prevailing in juvenile court. And, again, I must emphasize that she had successfully done everything that the court wanted her to do. And, again, I must emphasize that there was a court order that Mr. Boyle or, excuse me, that nobody was to interview the children except the minors, I'm sorry, except the social workers and minors counsel. Then there was another order that, in effect, said get an independent therapist for the mother and the children. And the social workers didn't want that. Why? Because Ms. Wellman stated specifically there will be no change in the custody order. And it is for that, for those reasons, I believe, I've shown, well, Judge Barrett herself found concerted action on the part of all these players, both the nongovernmental actors and the governmental actors. I believe that if you take the complaint as a whole and look at all of these detailed allegations, that there was a meeting of the minds in terms of what the goal was, and that was to deprive her ultimately of custody. And then when it became clear to Referee Skiba, excuse me, Padilla, that we were going to succeed in proving the falsity of these reports, it was a slowdown, the aborting of the hearing, and then trying to mount a constitutional hearing before Referee Skiba. She made it very clear that that would be impossible. Now I want to talk quickly about the immunity. We know that under 820.21 of the state code that there is no absolute immunity for filing falsified reports or actions. I mean, there's not an immunity issue in this action, is there? Well, it had – both Ms. Grinner and I had briefed it, and then Miller v. — Yeah, but it wasn't addressed by the district court. No. So — The only issue addressed by the district court was the meeting of the mind issue or element of the conspiracy. But in addition, Your Honor, besides the conspiracy, the misconduct of the social workers themselves stand on their own in terms that they could be sued even if you found that there wasn't a conspiracy or the meeting of the minds. And I had asked leave to amend at the oral argument, and Judge Barrett said, well, and I've cited that in my reply brief with the – to the transcript. She said, well, why don't you wait and see what I'm going to do. And then she just dismissed the whole action, and here we are before Your Honors. So that the social workers standing by themselves would be actionable setting aside the whole civil rights conspiracy. And I made it clear to Judge Barrett that that is – I also wanted to make it clear it wasn't just a conspiracy. It was their unconstitutional misconduct that they would have to answer on their own. And that's why probably Ms. Grinner thoroughly the issue of immunity, and I did also, because my position is they have at best only qualified immunity for falsifying evidence, if you want to call that. It was double and triple hearsay. But in any event, unsworn to reports. And then relying on the course testimony of two little children who, if you're just a regular, normal person, you would know, wait a minute. You know, you've got this father with his history, and you've got this therapist. Common sense would tell you that whatever was their claiming that the children were saying, keeping in mind they never went to the children themselves, they just relied on Boyle. Now, they did conduct other interviews at the home, and we contend that the social workers' reports that they put in were also false. And we were prepared to meet that. And I believe, was it Judge Reimer who had asked, or I forget which, a judge had said, well, was there ever a finding that there was no falsity? To the best of my knowledge, no. Because the reports were never being litigated until I came on board in May of 2001. And as I say, at that point, when it looked like we were winning, they aborted the hearing. So I'll say what I said. Okay. We will carry forward your argument, so if you have anything in addition to it. Okay. We'll let the judge talk. Good morning again, Your Honor. Your Honors, Anita Susan Brenner. I represent in this matter the County of Los Angeles and two county social workers, Ms. Wellman and Ms. Dallas. You know, much of what counsel has said really goes outside the four corners of this big lengthy complaint. I just wanted to point that out. And if we look at that complaint, there's a problem with the way it's pled. Counsel in oral argument stated that the only reason Darla Elwood lost custody was because of a social worker named DeMuro. Now the problem with the complaint is most of it talks about a social worker named DeMuro, a social worker named Danowski. And I am here today representing social workers Wellman and Dallas, not DeMuro, not Danowski. They are not defendants in this case. So the problem with talking about conspiracy of the government and the social workers is that when you closely read this complaint, what becomes apparent is that these two social workers came on board. They're mentioned in paragraph 72 of the complaint, AER page 20, that they came on the case and continued on it until the case was dismissed in October 2001. Even though the judge below did not reach the issues of immunity in view of the Doe decision yesterday and Miller v. Gammey, I would submit, that all of the actions of social workers Wellman and Dallas were in the context of litigation and therefore, as clarified by yesterday's opinion, entitled to absolute immunity. But turning to the issue decided below, which is that there was no meeting of the minds shown under Woodrum, merely conclusory allegations of conspiracy had been alleged. We have a lot of facts. We have facts alleged that mention the social workers, but mostly they mention DeMuro and they mention Danowski. Secondly, I would submit with respect to the county that there is no showing here of any county policy. And in the paper submitted below by counsel for plaintiff, there's some sort of letter, but it is not a county policy. It was a letter in response to counsel's letter complaining about certain events. And I would submit that the opinion or order of Judge Baird lays it out very clearly that under Woodrum, what we have here are merely conclusory allegations and a number of admissions that give alternative explanations for what really went on here. For example, at AER page 16, much discussion about the conspiracy was that social workers brought up the sexual relationships of Darla Elwood with her husband or husband's brother, her other husband, that these people had access to grind. Nowhere is it alleged that my clients falsified records, that my clients were actually the people who were responsible in the way that Ms. Social Worker DeMuro is alleged to be responsible. It's as if suddenly in the fifth and sixth causes of action, a woman in Dallas show up and it's not really clear what the basis of the case against them is. Unless there are any questions, I will submit. Thank you.  ...charges of...indicative of any conspiracy or reading of the minds with any of the county social workers or any other party in the action. Absent that issue, the only other issue affecting my client is the court's exercise of discretion in submitting the remaining state law cause of action that was extant in the complaint at the time that the county's motion was granted. I think the statute's clear. The court has discretion. There's been no showing of any... Good morning again. I will simply not argue and join in the arguments of my learned counsel on behalf of the appellee, Mr. Morin. All right. Thank you very much. Can I have a few seconds? Yes. Oh, you have three minutes and 20 seconds. Thank you, Your Honor. Your Honor, with respect to the allegations against Wellman and Dallas, they are as follows. Paragraphs 9, 52, 53, 55, 56, alleging false reports made by Wellman, 57 and 58 going into detail what Wellman did. 59, 60, 62, 63, 64, 69, and 72, we allege due process violations committed specifically by Wellman as approved by Dallas's supervisor. I've only seen the first three. You said that Dallas comes into this case because she repeatedly approved reports that when they got on her desk, she should have taken a look and said, Ms. Wellman, go back. You haven't gotten cooperation. They look very one-sided. You shouldn't be doing this. And that's her responsibility. Then Wellman is also... Description of Wellman's repeatedly disobeying standing orders of Referee Skiba, get an independent therapist. No, I'm not going to do it. I don't want this mother to get her custody back. Repeatedly going to Boyle without ever getting a court order. It's incomprehensible why Referee Skiba would even allow this. It turned the whole proceeding on its head. And these due process violations aren't some abstract kind of thing. Darla Elwood, who never went, I will represent if sworn, she never went to college. She was a mommy at age 17, has pled in the complaint. Hers, she said, go to Tiffany. She didn't know all about Ann Rae Lucero. She didn't know about California Rule of Court 1650. They said, no, we're not going to go to Tiffany because of their agenda. Anyway, and the further allegations are 73, 74, 78, 82, 84, and 90. Against Delaplane, there are 7, 11, 24. More importantly, according to our allegation, is telling the friend, Amy Meinke, that it was Mr. Rodney Delaplane and the ex-wife, Julie Delaplane, who conspired to bring this hideous false charge against Anthony. They had no hesitation in trying to destroy the life of a young teenager, none whatsoever. There's also allegations of the domestic violence that he committed, 54, 60, to 66, 8, and 9. False charges he made against Ms. Elwood in paragraph 72-5, 77, 78, 82, 84, 90, 91, 108. False charges again, 115. And then, of course, the allegations against Moran, our legion, 11-17, 19-26, 30-32, and so on. That can be found at the reply brief at pages 23-24. The tragedy is these folks had an agenda and they acted on it. Nobody took them to task until May of 2001. And even with the argument, asking, please don't put in these reports because they don't meet standards, I have pled, I'm not arguing for my own knowledge, I've pled in the complaint that I did not say California Rule of Court 1650 in Ray Lucero's song, but I said they don't meet the standards because they're loaded with hearsay and the kind of reasonable challenge because of the agenda that the social workers had set. One quick comment on Miller v. GAMI. And in conjunction, Judge Schroeder has said that you've got to look at the function of what the social worker is doing. It will vary on a state-by-state basis. You go to 820.21 in clearly falsifying reports in conjunction with the analysis, the functional analysis set out in Colina, they have at best at this point qualified immunity. Thank you very much. All right. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber